UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANINDERJOT SINGH BHOGAL, | No.  1:26-cv-00698-DJC-SCR |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| WARDEN OF CALIFORNIA CITY DETENTION CENTER, | |
| Respondent. | |

Petitioner is a federal immigration detainee who filed a pro se habeas corpus petition pursuant to 28 U.S.C. § 2241 and is now proceeding through appointed counsel.  This action was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

Currently pending before the Court is petitioner's motion for a temporary restraining order as well as his § 2241 petition.  ECF Nos. 1-2.  The parties have fully briefed the issues raised therein.  ECF Nos. 12-13.  In the interests of judicial economy, the undersigned recommends granting petitioner's habeas corpus petition by requiring respondent to provide him with an individualized bond hearing.  The motion for a TRO should be denied as moot in light of the recommendation to grant merits relief on habeas petition.

## I.       Factual and Procedural History

Petitioner is an Indian national who was stopped by a Border Patrol agent near San Ysidro on January 7, 2025 without valid documentation to enter the United States.  ECF No. 12 at 10 (I-

1

213).  He has no criminal history.  ECF No. 12 at 10.  He was placed in expedited removal proceedings.  Id. at 11.  On January 30, 2025, petitioner indicated that he feared being returned to his home country and wanted to apply for asylum.  ECF No. 12 at 12.  On February 23, 2025, an asylum officer determined that he had a credible fear of returning to India, and he was issued a Notice to Appear ("NTA") on the same date and scheduled to appear before an immigration judge ("IJ") on March 6, 2025.  ECF No. 12 at 5-7 ("NTA"); ECF No. 12-1 at 3.  This immigration court date was reset two times before petitioner appeared for his first master calendar hearing in immigration court on March 20, 2025.  ECF No. 12-1 at 3.  In response to the NTA, petitioner admitted the charges of removability and his individual hearing date on his asylum application was scheduled for April 7, 2025.  ECF No. 12-1 at 3.  Since that date, the immigration hearing has been continued a total of eight times, with the Immigration Court responsible for four of those continuances.  ECF No. 12-1 at 3-4.  Petitioner's hearing on the merits of his asylum claim is currently scheduled for April 23, 2026.  ECF No. 12 at 22 (Notice of Hearing in Removal Proceedings).

In his pro se § 2241 application, petitioner challenges his prolonged detention without a bond hearing.  ECF No. 1.  Specifically, in claim one, petitioner contends that his Fifth Amendment right to due process has been violated based on his detention for over 12 months without any determination that he is a flight risk or a danger to the community.[1]  Id. at 6. Petitioner further emphasizes that the merits hearing on his asylum application has been repeatedly delayed.  Id. at 2.  By way of relief, petitioner requests his immediate release, or, in the alternative, a bond determination hearing where the government has the burden of proof regarding flight risk and dangerousness.  Id. at 7.  The Court appointed petitioner counsel on January 27, 2026.  ECF No. 7.

Respondent submits that petitioner is being lawfully detained pursuant to 8 U.S.C. § 1225(b)(1) while his asylum application is pending.  ECF No. 12 at 2.  Respondent notes that

---

[1]  The remaining two grounds for relief do not appear to sound in habeas since they concern petitioner's mental and physical health as well as his plans upon release.  ECF No. 1 at 6. Therefore, they are not addressed herein.

2

petitioner is an "applicant for admission" to the United States because he was stopped at the San Ysidro Port of Entry without any valid entry documents.  ECF No. 12 at 1.  As a result, petitioner was not admitted or paroled into the U.S. by an immigration officer.  ECF No. 12 at 1.  Respondent argues that petitioner is subject to mandatory detention until such time as his asylum application is resolved.  Id. at 2.  According to respondent, as an applicant for admission, petitioner does not have any right to due process "in any form other than the form provided by Congress" in the immigration statutes.  Id. at 3 (citing Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953), superseded by statute as explained in DHS v. Thuraissigiam, 591 U.S. 103 (2020)).

Petitioner's counseled reply brief acknowledges that he is detained pursuant to 8 U.S.C. § 1225(b), but argues that the Fifth Amendment's Due Process Clause prohibits his unreasonably prolonged detention.  ECF No. 13 at 1-2.  Based on the three factors announced in Mathews v. Eldridge, 424 U.S. 319 (1976), petitioner contends he is entitled to relief.  ECF No. 13 at 2-3.

**II.    Legal Standards**

**A. Constitutional Standards**

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas v. Davis, 533 U.S. 678, 693 (2001).  Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause.  The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").  In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies.  See Rodriguez Diaz, 53 F.4th at 1206-07.  Under Mathews, the

3

court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include.  Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others."  Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

### B. Statutory Immigration Framework

An applicant for admission subject to expedited removal is normally ordered removed "without further hearing or review."  8 U.S.C. § 1225(b)(1)(A)(i).  But if a § 1225(b)(1) [non-citizen] "indicates either an intention to apply for asylum ... or a fear of persecution," then that [non-citizen] is referred for an asylum interview.  8 U.S.C. § 1225(b)(1)(A)(ii).  While awaiting this credible fear interview, the non-citizen is to remain detained.  See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).  If an immigration officer determines after that interview that the [non-citizen] has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum."  8 U.S.C. § 1225(b)(1)(B)(ii).  At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing.

The only statutory mechanism for release from detention for an asylum applicant apprehended at the border is temporary release on parole "for urgent humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3.  Such parole, however, "shall not be regarded as an admission of the [non-citizen]."  8 U.S.C. § 1182(d)(5)(A).  Instead, when the purpose of the parole has been served, "the [non-citizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  Id.

### III.    Analysis

#### A. Petitioner Has a Protected Liberty Interest Against Unjustified Detention

This case turns on the scope of constitutional protections afforded to a non-citizen who

4

has not been admitted into the United States, but has a pending claim for asylum that immigration officials determined to be credible.  Based on the bona fide nature of petitioner's asylum claim, he is not subject to expedited removal, but instead to a prolonged period of detention as his individual case is heard first by an IJ and then, potentially, by the BIA and the Ninth Circuit Court of Appeal.  Given the protracted nature of obtaining merits review of his asylum claim and not one, but two potential appeals, there is no clear end in sight to petitioner's detention, which has now lasted for over 14 months.

Respondent takes the position that petitioner's constitutional rights go no further than the procedures authorized by the immigration detention scheme.  See 8 U.S.C. § 1225(b).  However, petitioner notes that his due process rights to liberty from unjustified detention are well established.  ECF No. 5-6.  "[T]he Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas, 533 U.S. at 693.  Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law.  Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); see also Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (finding that the plaintiffs who were detained under § 1225(b)(1) adequately "alleged a right to substantive due process to bond hearings" because "the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals").  Moreover, mandatory detention statutes like § 1225(b)(1) are subject to constitutional limitations on an as-applied basis.  See, e.g., Nielsen v. Preap, 586 U.S. 392, 420 (2019); Demore v. Kim, 538 U.S. 510, 532-33 (2003) (Kennedy, J., concurring).  Petitioner can accordingly invoke the Due Process Clause to seek protections against unjustified detention that extend beyond what Congress provided in § 1225(b).

/////

/////

### B. Due Process Framework for Evaluating Petitioner's Claim to a Bond Hearing

Petitioner argues that he is entitled to a bond hearing under the procedural due process Mathews v. Eldridge, 424 U.S. 319 (1976), framework.  The court applies that framework here and concludes that a prompt bond hearing is necessary, at which bond hearing respondent would bear the burden demonstrating continued detention is warranted.  See Rodriguez Diaz, 53 F.4th at 1206-07 (assuming without deciding that the Mathews standard applies to a due process challenge to a non-citizen's ongoing detention); A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 1424382, at *4 (E.D. Cal. May 16, 2025), adopted by 2025 WL 1808676 (E.D. Cal. July 1, 2025) (applying Mathews in case involving § 1225(b)(1) detention to order a bond hearing before an immigration judge); Maksim v. Warden, Golden State Annex, et al., No. 1:25-cv-00955-SKO (HC), 2025 WL 2879328 (E.D. Cal. Oct. 9, 2025) (same).

### 1. Private Interest

Turning to the first factor in Mathews, petitioner has a strong liberty interest in avoiding prolonged detention without a neutral detention hearing.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690.  Petitioner has been detained for over 14 months.  Compared to the six-month presumptive period set forth in Zadvydas, beyond which continued detention becomes prolonged, petitioner's detention qualifies as prolonged.  See Zadvydas, 533 U.S. at 701.  An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial."  Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011); see also Lopez v. Garland, 631 F.Supp.3d 870, 880 (E.D. Cal. 2022) ("As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.") (internal citation omitted).

While some of petitioner's prolonged detention is the result of continuances he requested in his immigration court proceedings, additional continuances have also resulted from a clogged immigration court docket.  See Lopez, 631 F.Supp.3d at 882 ("[T]he fact that Petitioner chose to pursue [an application for relief] and requested continuances to further that application does not

deprive him of a constitutional right to due process.").  Although petitioner has an individual hearing date in immigration court in April, that does not mean that his asylum application will be resolved on that date.  Moreover, a decision by the IJ is not the end of petitioner's asylum case since either side may appeal to the BIA.  If petitioner loses before the BIA, he may then also petition for review by the Ninth Circuit.  Thus, there is no clear end date for petitioner's detention and he faces a further prolonged period of detention before the ultimate resolution of his asylum case.

### 2.  Risk of Erroneous Deprivation

"[T]he probable value of additional procedural safeguards, i.e., a bond hearing, is high, because Respondents have provided virtually no procedural safeguards at all."  Maksim, 2025 WL 2879328, at *5.  "[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial."  Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011) (abrogated on other grounds); see also, Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018) (expressing "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional"); Diop v. ICE, 656 F.3d 221, 235 (3d Cir. 2011) (detention of an non-citizen under mandatory detention statute for "nearly three years without further inquiry into whether it was necessary to ensure his appearance at the removal proceedings or to prevent a risk of danger to the community, was unreasonable, and, therefore, a violation of the Due Process Clause").  Against this background, a bond hearing is a critical procedural safeguard because it provides both the noncitizen and the government with an opportunity to present witness testimony or evidence and be heard before a neutral adjudicator.  This factor also favors petitioner.

### 3.  Government's Interest

Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail."  Mathews, 424 U.S. at 335.  "[T]he government has a strong interest in effecting removal, and in protecting the public from danger."  Maksim, 2025 WL 2879328, at *5 (citations omitted).  "[H]owever, the key government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing."  Id. (citation and

quotation omitted).  Petitioner's individual request for a bond hearing also involves a minimal fiscal and administrative burden.  In this case, respondent chose not to address any of the factors in Mathews.  Thus, there is not even the suggestion, much less a basis in the record to find, any fiscal or administrative burden to the government that would result from providing a bond hearing to petitioner.  This factor also weighs in favor of petitioner.

In light of this analysis, the undersigned recommends that the petition for a writ of habeas corpus be granted on claim one, and respondent be ordered to provide him a bond hearing before an IJ within fourteen days where the government has the burden of demonstrating by clear and convincing evidence that petitioner is a risk of flight or danger to the community.  See Maksim, 2025 WL 2879328, at *6 (adopting clear and convincing evidence burden in similar circumstance); Singh, 638 F.3d at 1204 ("[D]ue process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake ... are both particularly important and more substantial than mere loss of money.").

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be granted with respect to ground one.

2. Respondent be ordered to provide petitioner with a bond hearing before an IJ within fourteen days where the IJ must order petitioner released unless the IJ finds that he presents a risk of flight or danger to the community by clear and convincing evidence.

3. Petitioner's motion for a temporary restraining order (ECF No. 2) be denied as moot.

4. Respondent's motion to dismiss (ECF No. 12) be denied.

5. The Clerk of the Court enter judgment in favor of petitioner and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v.

Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 9, 2026

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE